UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASPEN INSURANCE UK, LTD., a foreign insurer,<br><br>Plaintiff,<br><br>v.<br><br>ABSOLUTE RETURN SOLUTIONS, INC., a Washington corporation; JAMES BLACK, an individual; BRIAN DECKER, an individual,<br><br>Defendants. | CASE NO. C12-1491MJP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: RETROACTIVE DATE |

This matter comes before the Court on Plaintiff's motion for summary judgment. (Dkt. No. 14.) Having reviewed the motion, Defendants' response (Dkt. No. 17.), Plaintiff's reply (Dkt. No. 20.), and the remaining record, the Court GRANTS Plaintiff's motion for summary judgment. Aspen has no obligation to defend or indemnify the Defendants in the Sandwith matter and may withdraw the defense it is currently providing.

**Background**

Plaintiff Aspen Insurance UK, Ltd. ("Aspen") seeks summary judgment to release it from liability to defend or indemnify Defendants Absolute Return Solutions, Inc. ("ARS") and its

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 1

principal owners, James Black and Brian Decker. (Dkt. No. 14 at 2.) Plaintiff is currently defending the Defendants in arbitration. (Dkt. No. 17 at 2.)

Black and Decker worked as investment advisors for Pacific West Financial Consultants, Inc. ("PWFC") through late 2008. (Dkt. No. 18 at 114.) Decker joined PWFC on June 2, 1997; Black joined on October 8, 2003. (Dkt. No. 17 at 3.) During their time with PWFC, Black and Decker began handling the assets of David Sandwith and Susan Sandwith Crader ("Sandwiths"), brother and sister who received a sizeable sum from the sale of their father's company. (Id. at 2.) Black and Decker founded ARS in October 2008 and continued to handle the Sandwiths' investments. (Dkt. No. 18 at 1.)

ARS is an investment advisor registered with the Washington Department of Financial Institutions. (Id.) In 2008, the Sandwiths' investments lost a great deal of money. (Dkt. No. 14 at 2.) The Sandwiths complained to the Defendants numerous times throughout 2009 about their losses and finally moved their funds to different investment firms in late 2009. (Id.) Defendants did no business with the Sandwiths after late 2009. (Dkt. No. 14 at 3.)

On January 31, 2012, the Sandwiths filed a Financial Industry Regulatory Authority ("FINRA") Statement of Claim against ARS, Black, Decker, PWFC, USA Financial Securities, Purcell Advisory Services, and Teri Weigel (an employee of Purcell). (Dkt. No. 15 at 3-4.) The Sandwiths asserted eight claims: 1) negligent investment management advice; 2) negligent supervision; 3) negligent misrepresentation; 4) violation of the Securities Act of Washington; 5) violation of California securities law; 6) violation of the Washington Consumer Protection Act ("CPA"); 7) breach of fiduciary duty; and 8) joint, several, vicarious, and control person liability. (Id. at 4.) An arbitration proceeding is set for March 2013. (Dkt. No. 17 at 2.)

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 2

PWFC held an insurance policy with Illinois Union Insurance Company of the ACE family of insurance ("ACE"). (Dkt. No. 18 at 113.) This policy lasted through March 1, 2012. (Id.) Black and Decker were listed as insured parties on this policy. (Id. at 114.) ACE coverage was limited to services performed on behalf of PWFC. (Id.)

ARS obtained insurance through RIA Registrar, LLC ("RIA") shortly after ARS was founded. (Id. at 2.) Investment advisor companies enroll in registrar programs of sponsoring agencies, such as RIA, who purchase errors and omissions insurance policies and pass the coverage to investment advisor companies that enroll in their programs. (Dkt. No. 14 at 4-5.) Errors and omissions coverage insures investment professionals from liability that arises from negligence, omissions, mistakes, and errors common in their professional practice. 9A LEE R. RUSS ET AL., COUCH ON INS. § 131:38 (2012). ARS enrolled in RIA's errors and omissions policy through Scottsdale Insurance Company ("Scottsdale") shortly after ARS was founded. (Dkt. No. 18 at 2.) Scottsdale covered ARS until August 21, 2010. (Dkt. No. 15 at 44.) After ARS's coverage under the Scottsdale policy expired, ARS applied for coverage in RIA's plan through Aspen. (Dkt. No. 14 at 5.) The policy period for the Aspen policy was September 1, 2010–August 1, 2011. (Dkt. No. 15 at 81.)

The primary dispute involves the correct application of the "retroactive date" in the policy. A retroactive date limits coverage to a specific date defined in the contract. 4 PHILIP L. BRUNER AND PATRICK J. O'CONNOR, BRUNER & O'CONNOR CONSTR. LAW § 11:283 (2012). This prevents coverage for claims that occurred before the retroactive date, even if they are brought during the coverage period. (Id.) The Aspen policy defines the retroactive date as the date "from which coverage has been maintained by the Insured without interruption." (Dkt. No. 15 at 70.)

Plaintiff asserts that the actions that gave rise to the loss occurred no later than 2009, and any losses occurring prior to September 1, 2010, are not covered by the Aspen policy. (Dkt. No. 14 at 1.) Plaintiff argues that, because ARS's coverage with Scottsdale expired August 21, 2010, and the Aspen coverage did not begin until September 1, 2010, an interruption in coverage occurred. (Dkt. No. 14 at 7.) Therefore, Plaintiff asserts that it is not liable to defend or indemnify the Defendants because the Aspen policy's retroactive date is September 1, 2010, the first date of uninterrupted coverage. (Id.)

Defendants argue that that the retroactive date clause can be interpreted to apply to RIA, holder of the master policy, not them. (Dkt. No. 17 at 9.) Because RIA was covered from August 1, 2010, Defendants assert there was no gap in coverage. (Dkt. No. 15 at 51.) The policy alternates between use of "the Insured," "an Insured," and "any Insured," but it does not clearly define any of these terms. (Dkt. No. 17 at 9, emphasis added.) Even thought ARS was not covered until September 1, 2010, Defendants argue the policy was unclear that the retroactive date applied specifically to ARS and not to RIA. (Dkt. No. 17 at 9.) Since policy language with two reasonable interpretations is ambiguous, Defendants argue that the Court should apply the interpretation most favorable to the insured pursuant to Washington law. See Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wn.2d 50, 68 (1995) (Dkt. No. 17 at 7.)

Defendants also claim that some actions at issue in the Sandwiths' complaint occurred after September 1, 2010. (Id. at 10.) An element of a CPA violation is public harm, including the "potential for repetition." (Id.) Defendants argue that because of this element, the Sandwiths' FINRA claim for a violation of the CPA alleges ongoing harm. (Dkt. No. 17 at 10.) Plaintiffs respond that the Sandwiths seek only monetary compensation for losses they alone have already suffered. (Dkt. No. 20 at 5.)

1	Finally, Black and Decker argue that they were covered as individuals under PWFC's
2	ACE policy through March 2012. (Dkt. No. 17 at 4.) They assert that because they have been
3	consistently insured under PWFC's ACE policy, no gap occurred in their coverage as individuals
4	and the retroactive date cannot be September 1, 2010. (Id. at 12.)

**Discussion**

A.  Legal Standard

The Court may grant summary judgment if the moving party demonstrates that there is no genuine dispute to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no material issue of fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This Court has jurisdiction because there is complete diversity. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law of the state. Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011).

In Washington, interpretation of language in an insurance policy is a matter of law. Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 423 (1997) (en banc). Summary judgment should be granted when no factual dispute exists and the matter rests solely on interpretation of the policy language. Stouffer & Knight v. Continental Casualty Co., 96 Wn. App. 741, 747 (1999). Policy language should be viewed in fair terms that an average person purchasing insurance would understand. E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wn.2d 901, 907 (1986). An insurance policy is ambiguous if the language on its face can be reasonably interpreted in two ways. Berg v. Hudesman, 115 Wn.2d 657, 669 (1990). However, language that is "not a model of clarity" does not necessarily mean a provision is ambiguous. Mutual of Enumclaw Ins. Co. v. Grimstad-Hardy, 71 Wn. App. 226, 243 (1993).

B.  Retroactive Date for ARS

It is unambiguous that the retroactive date for ARS is September 1, 2010. "Retroactive date" is defined in the Aspen policy as the date "from which coverage has been maintained by the insured without interruption." (Dkt. No. 15 at 70.)  The Scottsdale policy ended on August 21, 2010, before the commencement date of the Aspen policy, September 1, 2010. (Dkt. No. 15 at 44 and 79.)  Thus, the first date of uninterrupted coverage was September 1, 2010, so acts that occurred prior to that date are not covered under the Aspen policy. (Id. at 81.)

RIA is not an insured in the Aspen policy. RIA is listed as the "Sponsoring Organization." (Dkt. No. 15 at 51.) "Sponsoring Organization" and "Insured" are defined separately. (Dkt. No. 15 at 56-57.) "Insured" is defined as falling into one of four categories: 1) "a registered investment advisory affiliated with the Sponsoring Organization"; 2) associates of the advisor; 3) past, present, or future directors, officers, partners, or employees of the advisor; or 4) spouses of advisors. (Dkt. No. 20 at 3.) RIA falls into none of these categories. Therefore, the fact that RIA was a sponsor on August 1, 2010, does not figure into the analysis of the retroactive date for ARS.

    C.  Ongoing Harm

No activities related to the Sandwiths' claim occurred after September 1, 2010. While the Sandwiths allege a violation of the Washington CPA, they do not complain of any wrongdoing after 2009. (Dkt. No. 14 at 4, Dkt. No. 17 at 10.) While the Sandwiths allege the Defendants' conduct "affected the public interest," nothing in the Sandwiths' claim demonstrates ongoing harm or actions that occurred after 2009. (Dkts. No. 15 at 21, 14 at 4, 17 at 10.) Therefore, Defendants' argument that wrongful acts occurred after September 1, 2010, fails, and Plaintiff is not liable to defend or indemnify the Defendants.

    D.  Retroactive Date for Black and Decker

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 6

Black and Decker's coverage also began on September 1, 2010. Black and Decker's coverage through ACE was limited in scope to services rendered on behalf of PWFC and is, therefore, irrelevant to coverage of services rendered on behalf of ARS. (Dkt. No. 18 at 114.) The ACE policy listed Black and Decker as insured registered representatives. (Id.) It also defined the "insured registered representative" as a registered investment advisor that "engages in the business of rendering professional services on behalf of the insured broker-dealer." (Id. at 30, emphasis added.) PWFC was defined as the insured broker-dealer in the ACE policy. (Id. at 7.) The ACE policy did not cover Black and Decker for actions made on behalf of ARS because the policy covered them only as employees of PWFC. (Id.) In addition, Black and Decker's act of purchasing coverage under ARS's policy shows that they believed they were not covered by PWFC's policy at that time. (Dkt. No. 14 at 4.)  Therefore, the retroactive date for Black and Decker's Aspen coverage is September 1, 2010, because they did not maintain uninterrupted coverage. (Dkt. No. 15 at 81.)

## Conclusion

Defendants were not insured between August 21 and September 1, 2010. The retroactive date for the Aspen policy is September 1, 2010. All losses occurred prior to that date. Plaintiff is not liable to defend or indemnify Defendants for these losses. The Court GRANTS summary judgment and releases Plaintiff from liability regarding the Sandwith matter.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of February, 2013.

Marsha J. Pechman
United States District Judge