1

2

3

4

5

6

7

8

9

                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
                            AT SEATTLE

10   ASPEN INSURANCE UK, LTD., a          CASE NO. C12-1491MJP
     foreign insurer,

11                                        ORDER GRANTING PLAINTIFF'S
                        Plaintiff,        MOTION FOR SUMMARY

12                                        JUDGMENT RE: RETROACTIVE
            v.                            DATE

13

     ABSOLUTE RETURN SOLUTIONS,

14   INC., a Washington corporation; JAMES
     BLACK, an individual; BRIAN

15   DECKER, an individual,

16                      Defendants.

17          This matter comes before the Court on Plaintiff's motion for summary judgment. (Dkt.

18   No. 14.) Having reviewed the motion, Defendants' response (Dkt. No. 17.), Plaintiff's reply

19   (Dkt. No. 20.), and the remaining record, the Court GRANTS Plaintiff's motion for summary

20   judgment. Aspen has no obligation to defend or indemnify the Defendants in the Sandwith

21   matter and may withdraw the defense it is currently providing.

22                                    **Background**

23          Plaintiff Aspen Insurance UK, Ltd. ("Aspen") seeks summary judgment to release it from

24   liability to defend or indemnify Defendants Absolute Return Solutions, Inc. ("ARS") and its

1  principal owners, James Black and Brian Decker. (Dkt. No. 14 at 2.) Plaintiff is currently

2  defending the Defendants in arbitration. (Dkt. No. 17 at 2.)

3        Black and Decker worked as investment advisors for Pacific West Financial Consultants,

4  Inc. ("PWFC") through late 2008. (Dkt. No. 18 at 114.) Decker joined PWFC on June 2, 1997;

5  Black joined on October 8, 2003. (Dkt. No. 17 at 3.) During their time with PWFC, Black and

6  Decker began handling the assets of David Sandwith and Susan Sandwith Crader ("Sandwiths"),

7  brother and sister who received a sizeable sum from the sale of their father's company. (Id. at 2.)

8  Black and Decker founded ARS in October 2008 and continued to handle the Sandwiths'

9  investments. (Dkt. No. 18 at 1.)

10        ARS is an investment advisor registered with the Washington Department of Financial

11  Institutions. (Id.) In 2008, the Sandwiths' investments lost a great deal of money. (Dkt. No. 14 at

12  2.) The Sandwiths complained to the Defendants numerous times throughout 2009 about their

13  losses and finally moved their funds to different investment firms in late 2009. (Id.) Defendants

14  did no business with the Sandwiths after late 2009. (Dkt. No. 14 at 3.)

15        On January 31, 2012, the Sandwiths filed a Financial Industry Regulatory Authority

16  ("FINRA") Statement of Claim against ARS, Black, Decker, PWFC, USA Financial Securities,

17  Purcell Advisory Services, and Teri Weigel (an employee of Purcell). (Dkt. No. 15 at 3-4.) The

18  Sandwiths asserted eight claims: 1) negligent investment management advice; 2) negligent

19  supervision; 3) negligent misrepresentation; 4) violation of the Securities Act of Washington; 5)

20  violation of California securities law; 6) violation of the Washington Consumer Protection Act

21  ("CPA"); 7) breach of fiduciary duty; and 8) joint, several, vicarious, and control person liability.

22  (Id. at 4.) An arbitration proceeding is set for March 2013. (Dkt. No. 17 at 2.)

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 2

1       PWFC held an insurance policy with Illinois Union Insurance Company of the ACE

2 family of insurance ("ACE"). (Dkt. No. 18 at 113.) This policy lasted through March 1, 2012.

3 (Id.)  Black and Decker were listed as insured parties on this policy. (Id. at 114.) ACE coverage

4 was limited to services performed on behalf of PWFC. (Id.)

5       ARS obtained insurance through RIA Registrar, LLC ("RIA") shortly after ARS was

6 founded. (Id. at 2.) Investment advisor companies enroll in registrar programs of sponsoring

7 agencies, such as RIA, who purchase errors and omissions insurance policies and pass the

8 coverage to investment advisor companies that enroll in their programs. (Dkt. No. 14 at 4-5.)

9 Errors and omissions coverage insures investment professionals from liability that arises from

10 negligence, omissions, mistakes, and errors common in their professional practice. 9A LEE R.

11 RUSS ET AL., COUCH ON INS. § 131:38 (2012). ARS enrolled in RIA's errors and omissions policy

12 through Scottsdale Insurance Company ("Scottsdale") shortly after ARS was founded. (Dkt. No.

13 18 at 2.) Scottsdale covered ARS until August 21, 2010. (Dkt. No. 15 at 44.) After ARS's

14 coverage under the Scottsdale policy expired, ARS applied for coverage in RIA's plan through

15 Aspen. (Dkt. No. 14 at 5.) The policy period for the Aspen policy was September 1, 2010–

16 August 1, 2011. (Dkt. No. 15 at 81.)

17       The primary dispute involves the correct application of the "retroactive date" in the

18 policy. A retroactive date limits coverage to a specific date defined in the contract. 4 PHILIP L.

19 BRUNER AND PATRICK J. O'CONNOR, BRUNER & O'CONNOR CONSTR. LAW § 11:283 (2012). This

20 prevents coverage for claims that occurred before the retroactive date, even if they are brought

21 during the coverage period. (Id.) The Aspen policy defines the retroactive date as the date "from

22 which coverage has been maintained by the Insured without interruption." (Dkt. No. 15 at 70.)

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 3

1    Plaintiff asserts that the actions that gave rise to the loss occurred no later than 2009, and

2  any losses occurring prior to September 1, 2010, are not covered by the Aspen policy. (Dkt. No.

3  14 at 1.)  Plaintiff argues that, because ARS's coverage with Scottsdale expired August 21, 2010,

4  and the Aspen coverage did not begin until September 1, 2010, an interruption in coverage

5  occurred. (Dkt. No. 14 at 7.) Therefore, Plaintiff asserts that it is not liable to defend or

6  indemnify the Defendants because the Aspen policy's retroactive date is September 1, 2010, the

7  first date of uninterrupted coverage. (Id.)

8    Defendants argue that that the retroactive date clause can be interpreted to apply to RIA,

9  holder of the master policy, not them. (Dkt. No. 17 at 9.) Because RIA was covered from August

10  1, 2010, Defendants assert there was no gap in coverage. (Dkt. No. 15 at 51.) The policy

11  alternates between use of "the Insured," "an Insured," and "any Insured," but it does not clearly

12  define any of these terms. (Dkt. No. 17 at 9, emphasis added.) Even thought ARS was not

13  covered until September 1, 2010, Defendants argue the policy was unclear that the retroactive

14  date applied specifically to ARS and not to RIA. (Dkt. No. 17 at 9.) Since policy language with

15  two reasonable interpretations is ambiguous, Defendants argue that the Court should apply the

16  interpretation most favorable to the insured pursuant to Washington law. See Queen City Farms,

17  Inc. v. Cent. Nat'l Ins. Co., 126 Wn.2d 50, 68 (1995) (Dkt. No. 17 at 7.)

18    Defendants also claim that some actions at issue in the Sandwiths' complaint occurred

19  after September 1, 2010. (Id. at 10.) An element of a CPA violation is public harm, including the

20  "potential for repetition." (Id.) Defendants argue that because of this element, the Sandwiths'

21  FINRA claim for a violation of the CPA alleges ongoing harm. (Dkt. No. 17 at 10.) Plaintiffs

22  respond that the Sandwiths seek only monetary compensation for losses they alone have already

23  suffered. (Dkt. No. 20 at 5.)

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 4

1    Finally, Black and Decker argue that they were covered as individuals under PWFC's

2 ACE policy through March 2012. (Dkt. No. 17 at 4.) They assert that because they have been

3 consistently insured under PWFC's ACE policy, no gap occurred in their coverage as individuals

4 and the retroactive date cannot be September 1, 2010. (Id. at 12.)

**Discussion**

6    A.  Legal Standard

7    The Court may grant summary judgment if the moving party demonstrates that there is no

8 genuine dispute to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ.

9 P. 56(a). The moving party bears the burden of demonstrating no material issue of fact exists.

10 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This Court has jurisdiction because there is

11 complete diversity. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive

12 law of the state. Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011).

13    In Washington, interpretation of language in an insurance policy is a matter of law.

14 Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 423 (1997) (en banc). Summary judgment should be

15 granted when no factual dispute exists and the matter rests solely on interpretation of the policy

16 language. Stouffer & Knight v. Continental Casualty Co., 96 Wn. App. 741, 747 (1999). Policy

17 language should be viewed in fair terms that an average person purchasing insurance would

18 understand. E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wn.2d 901, 907 (1986).

19 An insurance policy is ambiguous if the language on its face can be reasonably interpreted in two

20 ways. Berg v. Hudesman, 115 Wn.2d 657, 669 (1990). However, language that is "not a model

21 of clarity" does not necessarily mean a provision is ambiguous. Mutual of Enumclaw Ins. Co. v.

22 Grimstad-Hardy, 71 Wn. App. 226, 243 (1993).

23    B.  Retroactive Date for ARS

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 5

1    It is unambiguous that the retroactive date for ARS is September 1, 2010. "Retroactive

2    date" is defined in the Aspen policy as the date "from which coverage has been maintained by

3    the insured without interruption." (Dkt. No. 15 at 70.)  The Scottsdale policy ended on August

4    21, 2010, before the commencement date of the Aspen policy, September 1, 2010. (Dkt. No. 15

5    at 44 and 79.)  Thus, the first date of uninterrupted coverage was September 1, 2010, so acts that

6    occurred prior to that date are not covered under the Aspen policy. (Id. at 81.)

7    RIA is not an insured in the Aspen policy. RIA is listed as the "Sponsoring

8    Organization." (Dkt. No. 15 at 51.) "Sponsoring Organization" and "Insured" are defined

9    separately. (Dkt. No. 15 at 56-57.) "Insured" is defined as falling into one of four categories: 1)

10   "a registered investment advisory affiliated with the Sponsoring Organization"; 2) associates of

11   the advisor; 3) past, present, or future directors, officers, partners, or employees of the advisor; or

12   4) spouses of advisors. (Dkt. No. 20 at 3.) RIA falls into none of these categories. Therefore, the

13   fact that RIA was a sponsor on August 1, 2010, does not figure into the analysis of the

14   retroactive date for ARS.

15       C.  Ongoing Harm

16    No activities related to the Sandwiths' claim occurred after September 1, 2010. While

17   the Sandwiths allege a violation of the Washington CPA, they do not complain of any

18   wrongdoing after 2009. (Dkt. No. 14 at 4, Dkt. No. 17 at 10.) While the Sandwiths allege the

19   Defendants' conduct "affected the public interest," nothing in the Sandwiths' claim demonstrates

20   ongoing harm or actions that occurred after 2009. (Dkts. No. 15 at 21, 14 at 4, 17 at 10.)

21   Therefore, Defendants' argument that wrongful acts occurred after September 1, 2010, fails, and

22   Plaintiff is not liable to defend or indemnify the Defendants.

23       D.  Retroactive Date for Black and Decker

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 6

1  Black and Decker's coverage also began on September 1, 2010. Black and Decker's

2  coverage through ACE was limited in scope to services rendered on behalf of PWFC and is,

3  therefore, irrelevant to coverage of services rendered on behalf of ARS. (Dkt. No. 18 at 114.)

4  The ACE policy listed Black and Decker as insured registered representatives. (Id.) It also

5  defined the "insured registered representative" as a registered investment advisor that "engages

6  in the business of rendering professional services on behalf of the insured broker-dealer." (Id. at

7  30, emphasis added.) PWFC was defined as the insured broker-dealer in the ACE policy. (Id. at

8  7.) The ACE policy did not cover Black and Decker for actions made on behalf of ARS because

9  the policy covered them only as employees of PWFC. (Id.) In addition, Black and Decker's act

10  of purchasing coverage under ARS's policy shows that they believed they were not covered by

11  PWFC's policy at that time. (Dkt. No. 14 at 4.)  Therefore, the retroactive date for Black and

12  Decker's Aspen coverage is September 1, 2010, because they did not maintain uninterrupted

13  coverage. (Dkt. No. 15 at 81.)

14  **Conclusion**

15  Defendants were not insured between August 21 and September 1, 2010. The retroactive

16  date for the Aspen policy is September 1, 2010. All losses occurred prior to that date. Plaintiff is

17  not liable to defend or indemnify Defendants for these losses. The Court GRANTS summary

18  judgment and releases Plaintiff from liability regarding the Sandwith matter.

19  The clerk is ordered to provide copies of this order to all counsel.

20  Dated this 5th day of February, 2013.

21

22

Marsha J. Pechman
23  United States District Judge

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE: RETROACTIVE
DATE- 7